UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RAM IRON & METAL, INC. | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 1:22-CV-178-HAB-SLC |
| EXEON PROCESSORS, LLC., | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff RAM Iron & Metal, Inc. ("RAM") believes Defendant, Exeon Processors, LLC., ("Exeon") breached their contract, converted its property, and engaged in fraud when Exeon shorted RAM over $228,000 for copper wire. RAM filed suit in state court asserting all three causes of action and seeking treble damages for conversion and theft under Indiana Crime Victim's Relief, Ind. Code §35-43-4-2 and 3. After removing the case based on diversity, Exeon moved to dismiss RAM's Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim and Fed. R. Civ. P. 9(b). (ECF No. 4). The motion is fully briefed (ECF Nos. 5, 15, and 16) and ripe for consideration.[1] For the following reasons, Exeon's Motion will be GRANTED in part and DENIED in part. RAM will be GRANTED leave to file an amended complaint.

**DISCUSSION**

a. *Legal Standard*

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of

---

[1] The Court apologizes to the parties for the delay in addressing this motion. The Court has an active criminal docket which the Court must prioritize over its civil cases.

the plaintiff. *Bielanski v. Cty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). The allegations, however, must "give the defendant fair notice of what the...claim is and the grounds upon which it rests," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Under Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must state with particularity the circumstances constituting fraud. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). This requires that the plaintiff describe "the 'who, what, when, where, and how' of the fraud." *Id.* (quoting *Pirelli Armstrong Tire Corp. Riteree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011)). If the plaintiff's allegations fail to meet this heightened pleading standard, the court will dismiss claims of fraud. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 950 (7th Cir. 2013).

b. **Factual Background**

RAM is a Canadian family-owned scrap metal recycler. (Compl. ECF No. 3, ¶¶s 1, 4). As a scrap metal recycler, RAM's business involves processing end of life products and recovering recyclable metal materials so that they can be reintroduced as raw materials to produce new goods. (*Id.* ¶4). Exeon is a scrap metal dealer that buys, processes, and sells various types of metal, including copper. (*Id.* ¶5).

In early 2021, Exeon was in the market to purchase copper wire from RAM. (Compl. ¶6). RAM shipped a sample bale of 4000 pounds of copper wire to Exeon who, in turn, processed the

2

wire by removing leftover, non-copper scrap metal. (*Id.* ¶7). Exeon's processing revealed a "recovery rate" of approximately 90%, meaning that Exeon roughly recovered 90% of the shipped copper. (*Id.* ¶8). Recovery rates are important because they dictate how RAM is paid. Typical recovery rates for the type of copper wire Exeon sought to purchase are between 80% and 94%. (*Id.* ¶¶s 8, 9).

Following the sample shipment, the parties agreed that RAM would sell specified amounts of material to Exeon at a specified price. The parties also agreed that RAM would be paid for a recovery rate of 90%. (Compl. ¶¶s 10, 11). This agreement is memorialized in purchase orders attached to the Complaint. (Compl. Ex. A). Operating under their agreement, RAM shipped five loads of copper wire to Exeon and invoiced Exeon $676,921.00 based on the pricing formula and the 90% recovery rate. As Exeon processed the copper, it assured RAM that the recovery rate was 88-90%. When processing and settlement took longer than normal in the industry, Exeon's general manager explained that its production was postponed and upgrades were being made to Exeon's system to process the copper material. RAM was unaware that Exeon's existing system could not process the copper it had shipped.

When Exeon finally issued payment to RAM, the payment was $448,907, not the amount RAM had billed. (Compl. ¶17). Without further explanation, Exeon attributed the $228,014 shortage to an average recovery rate of 60%. (*Id.* ¶¶s 18-19). RAM's Complaint seeks recovery of the shortage plus treble damages, attorneys' fees and costs.

c. *Analysis*

The Complaint asserts claims for fraud (Count 1), breach of contract (Count 2), conversion (Count 3), and damages for violating the Indiana Crime Victim's Relief Act (Count 4). Exeon moves to dismiss all counts. The Court will address each count individually,

1. **Fraud**

Exeon moves to dismiss the fraud count because RAM failed to plead fraud with particularity under Fed. R. Civ. P. 9(b) and the allegations, even if adequate under Rule 9, fail to state a claim under Fed. R. Civ. P. 12(b)(6). Exeon asserts that the allegations do not put it on fair notice of the fraudulent conduct and it simply rehashes its breach of contract allegations.

The basic consideration underlying Rule 9(b) requires "fair notice" to a defendant of the alleged fraudulent conduct. *Vicom, Inc. v. Harbridge Merch. Servs, Inc.*, 20 F.3d 771, 777–78 (7th Cir. 1994). But here, as Exeon points out the allegations are lacking. The Complaint, as pled, asserts that someone at Exeon, at some unspecified time, made assurances to someone at RAM that the recovery rate was 88-90%, but later paid based on a recovery rate of 60%. The Complaint does not identify the individual at Exeon who made the representations or to whom at RAM the representations were made. The specific statements made are not identified nor is the date or method of communicating the statements identified. Failure to include this information does not provide fair notice to a defendant of the allegedly fraudulent conduct. *Shea v. General Motors LLC.,* 2021 WL 4804171 (N.D. Ind. Oct. 14, 2021) (failure to allege identity of the individual making the fraudulent statements, or the statements that were made fails to meet the particularity requirements). Thus, on this basis alone the Court could grant Exeon's Motion to Dismiss the fraud claim.

But the pleading problems go even further. RAM asserts that it has pled the elements of both actual and constructive fraud under Indiana law and that is all it need do. Yet, this Court's review of the allegations fails to confirm RAM's position. To properly plead actual fraud, a plaintiff must assert facts showing: (1) a material representation of a past or existing fact that (2) was false, (3) was made with knowledge or reckless ignorance of its falsity, (4) was made with the

intent to deceive, (5) was rightfully relied on by the complaining party, and (6) proximately caused injury to the complaining party. *Sample v. Kinser Ins. Agency, Inc.,* 700 N.E.2d 802, 805 (Ind. Ct. App. 1998). While intent may be pled generally, *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012), the Complaint here does not allege intent at all. Nor does it contain allegations of falsity or that the speaker (whoever that might have been) made the allegedly fraudulent representations with knowledge of falsity and with an intent to deceive RAM.

Moreover, under Indiana law, Plaintiff may not "repackage" an ordinary breach of contract claim into a fraud action. *Tobin v. Ruman,* 819 N.E.2d 78, 86 (Ind. Ct. App. 2004) (evidence of alleged misrepresentations surrounding contract terms "merely establishes" breach of contract, but plaintiff "offered no evidence establishing that [defendants'] actions constitute the separate and independent tort of fraud"). Only if the plaintiff proves that the conduct of the breaching party independently establishes the elements of a common law tort may the plaintiff recover for fraud. *Id.* "Thus, a claimant who brings both a breach of contract and a fraud claim must plead facts establishing that (1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud resulted in injury distinct from that resulting from the breach." *Id.; Epperly v. Johnson,* 734 N.E.2d 1066, 1073 (Ind. Ct. App. 2000).

As RAM has pled its claim, the conduct alleged for the breach of contract is the failure to pay a 90% recovery rate. This same conduct underlies the fraud allegations: that someone at Exeon at some unspecified time made assurances to someone at RAM that the recovery rate was 88-90% but later paid based on a recovery rate of 60%. Aside from the earlier noted failure to plead fraud with specificity, the conduct supporting the fraud count and the breach of contract count appears to be the same. Likewise, the Complaint does not plead facts amounting to a distinct injury from

the injury asserted in the breach of contract claim. Plaintiff's claim for actual fraud then, is DISMISSED.

As for any claim of constructive fraud, this appears to be an afterthought by RAM asserted for the first time in its response to the motion to dismiss. To state a claim for constructive fraud, a defendant must allege facts plausibly giving rise to: (1) a duty owing by the party to be charged to the complaining party due to their relationship; (2) violation of that duty by making deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance on it by the complaining party; (4) injury to the complaining party as a proximate result of it; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party. *Kapoor v. Dybwad*, 49 N.E.3d 108, 124 (Ind. Ct. App. 2015). But none of these facts have been alleged in the operative Complaint; and, asserting them in a response to a motion to dismiss is improper. *Pirelli Armstrong Tire Corp. Retiree Med.,* 631 F.3d at 442 (it is an "axiomatic rule that a plaintiff may not amend his complaint in his response brief."). The Complaint does not plead facts establishing the basis for the duty allegedly owed to RAM and, even if RAM asserts the contractual relationship creates that duty, "an arms-length contractual relationship is not enough to give rise to a claim of constructive fraud." *Skinner v. Metro. Life Ins. Co.,* 829 F.Supp.2d 669, 681 (N.D. Ind. 2010); *Morgan Asset Holding Corp. v. CoBank, ACB,* 736 N.E.2d 1268, 1273 (Ind. 2000); *Comfax Corp. v. North Am. Van Lines,* 587 N.E.2d 118, 126 (Ind. Ct. App. 1992) ("pure contractual relations between parties entering into an arm's length transaction may not form the basis for constructive fraud"); *see also Orem v. Ivy Tech State Coll.,* 711 N.E.2d 864, 869 (Ind. Ct. App. 1999) ("There must always be a violation of some duty owing to plaintiff, and generally such duty must arise by operation of law and not by mere agreement of the parties."). Thus, the Complaint fails to state a claim for constructive fraud.

In sum Exeon's Motion to Dismiss Count 1 is GRANTED. But the dismissal is without prejudice and the Court grants RAM leave to replead if it believes it can plausibly assert a fraud claim that complies with Rule 9(b), plead facts that state a claim for actual or constructive fraud and plead facts that would establish an independent tort from the breach of contract allegations. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

### 2. Breach of Contract

Next, Exeon seeks dismissal of RAM's breach of contract claim asserting that the purchase orders it attached to the Complaint (ECF No. 1-1, Ex. A) belie the Complaint's allegations that an agreement between Exeon and RAM existed for Exeon to pay based on a 90% recovery rate. Exeon contends that the purchase orders prove that all the components of the pricing formula are variable and that none used a fixed input of 90%. Rather, it asserts that RAM is paid on the actual rate of recovery for the purchase orders that it attaches. Citing to cases holding that where factual allegations are contradicted by the exhibits to a Complaint, the exhibits control, see *Kruse v. GS PEP Tech. Fund 2000 LP,* 2013 WL 1343660, at *6 (N.D. Ind. Apr. 2, 2013), Exeon believes RAM has not pled a breach of contract claim requiring Exeon to pay more than the $448,907 it already has.

In response, RAM points out that at least three of the purchase orders expressly state 90% and reference "Shredder Wire 90%" and "ASR 90%." (ECF No. 1-1, Ex. A, Purchase Orders dated 3/3/2021, 3/4/2021, and 3/11/2021). RAM contends that these purchase orders do not negate the Complaint's allegations but bolster them. RAM asserts that to the extent the parties disagree over the terms of the purchase orders, that disagreement is inappropriate for resolution on a motion to dismiss. The Court agrees.

A Rule 12(b)(6) motion tests the law of the claim, not the factual support. *Moore v. Univ. of Notre Dame*, 968 F. Supp. 1330, 1333 (N.D. Ind. 1997)); *see also*, *Waste, Inc. Cost Recovery Grp. v. Allis Chalmers Corp.*, 51 F.Supp.2d 936, 939 (N.D. Ind. 1999) ("A Rule 12(b)(6) motion to dismiss is properly utilized to test the legal sufficiency of the complaint or, stated differently, to test the law of the claim, not the facts that support it.") (citations omitted). But it is also true that a motion to dismiss should be denied if the record is not developed enough to permit the court to resolve an issue presented — if an issue is premature. *See Deschepper v. Midwest Wine and Spirits, Inc.*, 84 F.Supp.3d 767, 777 (N.D. Ill. 2015) ("It is premature to decide this issue at the motion to dismiss stage without the benefit of a fully developed record."); *Life Center, Inc. v. City of Elgin, Ill.*, 993 F.Supp.2d 863, 871 (N.D. Ill. 2013) (denying motion to dismiss on basis that "[t]here are factual issues that are premature to resolve at this juncture without discovery."); *Browning v. Flexsteel Industries, Inc.*, 959 F.Supp.2d 1134, 1152–53 (N.D. Ind. 2013) ("premature to decide [the] issue on the limited record available to the Court on a motion to dismiss under Rule 12(b)(6).").

Given the purpose of a 12(b)(6) motion, the Court finds that Count 2 of RAM's Complaint pleads sufficient facts to survive a Rule 12(b)(6) challenge. It alleges facts that would establish the existence of a contract, breach, and damages which is all that state law requires of it. *Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993) ("The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages.").[2] Whether the purchase orders (and how the parties interpret them) support or detract from those allegations must be fleshed out in discovery. Interpretation of contract language, which is what Exeon asks the Court to do by examining the purchase orders, is a question of fact that a court

---

[2] The parties do not conduct a choice of law analysis and cite Indiana law, which the Court accepts to resolve this motion.

cannot properly determine on a motion to dismiss. *Dawson v. Gen. Motors Corp.,* 977 F.2d 369, 373 (7th Cir. 1992.). Exeon's Motion to dismiss the breach of contract claim (Count 2) is DENIED.

### 3. Conversion

Exeon moves to dismiss RAM's claim for conversion (Count 3), again alleging that it is merely a repackaged version of its breach of contract action and that because it possessed the copper wire lawfully and there was no unqualified demand for its return, the conversion claim is deficient. RAM responds by saying simply that where a complaint alleges "that the defendant 'knowingly or intentionally exerted unauthorized control over' the plaintiff's property" it states a claim. RAM contends that when Exeon paid RAM based on a 60% recovery rate, it unlawfully appropriated RAM's personal property by retaining the wire for which it refused to pay.

RAM is correct that the tort of conversion mimics the Indiana criminal conversion statute, and requires a showing that the defendant has "knowingly or intentionally exert[ed] unauthorized control over property of another." I.C. § 35-43-4-3. *See also Clark-Silberman v. Silberman*, 78 N.E.3d 708, 715 (Ind. Ct. App. 2017). Indeed, it is a vital principle in a conversion claim that the defendant improperly exercise control over the plaintiff's property. But at heart, this is a breach of contract action and Exeon had lawful possession of the copper wire under the contract. "'Where the initial possession is lawful, conversion occurs only after an unqualified demand for return.'" *Aaron MacGregor & Assoc., LLC v. Zhejiang Jinfei Kaida Wheels Co., Ltd.*, 328 F.Supp.3d 906, 929 (N.D. Ind. 2018), quoting *Coffel v. Perry*, 452 N.E.2d 1066, 1069 (Ind. Ct. App. 1983). In the context of the parties' contract dispute, RAM has not alleged more than a mere breach of the parties' agreement. There are no allegations that RAM made a demand for return of the copper wire.

If that were not enough, "Indiana courts also do not allow claims for conversion in the context of contract disputes." *Clark-Silberman v. Silberman*, 78 N.E.3d 708, 715 (Ind. Ct. App. 2017) (citing *JET Credit Union v. Loudermilk*, 879 N.E.2d 594, 597 (Ind. Ct. App. 2008). "Because the tort of conversion under Indiana law requires a demonstration of criminal *mens rea* (awareness of a high probability that control over the plaintiff's property was unauthorized), conversion is not intended to cover mere breach of contract or failure to pay a debt." *KR Enterprises, Inc. v. Zerteck, Inc.*, 461 F. Supp. 3d 825, 835 (N.D. Ind. 2020) (citing *GHPE Holdings, LLC v. Huxley*, 69 N.E.3d 513, 522 (Ind. Ct. App. 2017)); *JET*, 879 N.E.2d at 597.

Exeon correctly points out that the conversion claim impermissibly seeks to turn a contract dispute into a tort dispute. The Complaint repeats and incorporates by reference the same allegations that support the breach of contract claim. Because Indiana law does not permit such an attempt, Count 3 must be dismissed. Exeon's Motion to Dismiss Count 3 is GRANTED.

### 4. Indiana Crime Victim's Relief Act (ICVRA)

Finally, Exeon moves to dismiss RAM's claim under the ICVRA. A civil claim under ICVRA can be brought by a person who "suffers a pecuniary loss as a result of a violation of IC 35-43 ...," referring to the article of Indiana's criminal code defining offenses against property, including theft, conversion, and deception. Ind. Code § 34-24-3-1.1. A claim under the ICVRA is derivative; a plaintiff must adequately plead a necessary underlying tort such as theft or conversion to recover. When a plaintiff cannot establish an underlying tort, dismissal is appropriate. *See Gordon v. Finch*, 2023 WL 3160297 (N.D. Ind. April 28, 2023) (dismissing ICVRA claims for failure to state a claim after dismissing defendants' counterclaims for fraud). Having granted Exeon's Motion to Dismiss the conversion claim in Count 3, RAM's claim for treble damages,

costs, and attorney fees must also be dismissed. Count 4 of the Complaint is, therefore, DISMISSED.

## CONCLUSION

For the reasons above, the Court GRANTS in part and DENIES in part Exeon's Motion to Dismiss (ECF No. 4). Counts 1 (fraud), 3 (conversion) and 4 (ICVRA) are DISMISSED. RAM may proceed on Count 2, the breach of contract claim. If RAM believes it can meet the pleading requirements set forth above for a fraud claim, RAM is granted leave to replead that claim on or before May 29, 2023.

SO ORDERED on May 16, 2023.

        s/ Holly A. Brady  
        JUDGE HOLLY A. BRADY  
        UNITED STATES DISTRICT COURT